IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT C. CHESNEY                                                                  PLAINTIFF

vs.                                        Civil No. 3:11-cv-03098

MICHAEL J. ASTRUE                                                                  DEFENDANT
Commissioner, Social Security Administration

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Robert C. Chesney ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable P. K. Holmes, III referred this case to this Court for the purpose of making a report and recommendation. In accordance with that referral, and after reviewing the arguments of counsel, this Court recommends Plaintiff's case be **AFFIRMED.**

**1.      Background:**

Plaintiff protectively filed his DIB application on November 24, 2009. (Tr. 10, 121-122). In his application, Plaintiff alleges he is disabled due to chronic pain. (Tr. 168). Plaintiff claims he began suffering from chronic pain after he was electrocuted 2002, and Plaintiff alleges this pain has progressively increased over time. *Id.* Plaintiff alleges an onset date of August 15, 2009. (Tr. 10, 121, 168). This application was denied initially and again on reconsideration. (Tr. 63-64).

Thereafter, Plaintiff requested an administrative hearing on his application, and this hearing

1

request was granted. (Tr. 81-92). An administrative hearing was held on November 18, 2010 in Harrison, Arkansas. (Tr. 29-62). At the administrative hearing, Plaintiff was present and was represented by Fredrick Spencer. *Id.* Plaintiff and a witness for Plaintiff testified at this hearing. *Id.* On the date of this hearing, Plaintiff was thirty-six (36) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (DIB). (Tr. 32). Although it does not appear this issue was addressed at the administrative hearing, Plaintiff also reported in his application that he had received a high school diploma. (Tr. 174).

On February 3, 2011, subsequent to this hearing, the ALJ entered an unfavorable decision on Plaintiff's application. (Tr. 5-23). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 12, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since August 15, 2009, his alleged onset date. (Tr. 12, Finding 2). The ALJ determined Plaintiff had the following severe impairments: fibromyalgia, arthralgias, cognitive disorder, alcohol dependence, mood disorder, hypertension, and gout. (Tr. 12-13, Finding 3). The ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 13-14, Finding 4).

In this case, Plaintiff's substance use is at issue. Therefore, in this decision, the ALJ evaluated Plaintiff's RFC both with and without his substance use. First, the ALJ evaluated Plaintiff's RFC with his alleged substance use. (Tr. 14-15, Finding 5). The ALJ found if he continued his substance use, Plaintiff only retained the RFC to perform the following:

> After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorder, the claimant is unable to engage in sustained work activity on a regular and continuing basis.

2

*Id.* Next, the ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and found that if Plaintiff continued his substance use, he would be unable to perform his PRW. (Tr. 15, Finding 6). The ALJ also evaluated whether Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 15-16, Finding 10). With his substance use, the ALJ found Plaintiff could not perform any other work. *Id.*

Second, the ALJ evaluated Plaintiff's RFC without his alleged substance use. (Tr. 17-22, Finding 13). The ALJ found Plaintiff retained the following RFC if he stopped his substance use:

> If the claimant stopped the substance use, the claimant would have the following residual functional capacity: can do work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple, direct, and concrete. The claimant can occasionally lift/carry 10 pounds and frequently less. He can sit for 6 hours and stand/walk for 2 hours. He can occasionally climb, balance, crawl, kneel, stoop, and crouch. In addition, he cannot do repetitive flexion/extension of the wrists.

*Id.*

The ALJ evaluated whether Plaintiff could perform his PRW if he stopped his substance use, and the ALJ determined that he could not. (Tr. 22, Finding 14). The ALJ then evaluated whether Plaintiff could perform other work existing in significant numbers in the national economy if he stopped his substance use. (Tr. 22-23, Finding 16). The Vocational Expert ("VE") Dale Thomas responded to post-hearing interrogatories on this issue. *Id.* Based upon those responses, the ALJ found Plaintiff could perform sedentary work such as a production worker with 500 such jobs regionally and 15,500 such jobs nationally; credit authorizer with 75 such jobs regionally and 16,000 such jobs nationally; and interviewer with 500 such jobs regionally and 37,000 such jobs nationally if he stopped his substance use. *Id.* Because the claimant could perform other work if he stopped his substance use, the ALJ found his substance use disorder was a contributing factor material to the

3

determination of disability. (Tr. 23, Finding 17). Because his substance use disorder was a contributing factor material to the determination of disability, the ALJ found Plaintiff had not been disabled within the meaning of the Act at any time from his alleged onset date through the date of the ALJ's decision or through February 3, 2011. *Id.*

On February 14, 2011, Plaintiff requested the Appeals Council's review of the ALJ's unfavorable decision. (Tr. 116). On September 13, 2011, the Appeals Council declined to review this disability determination. (Tr. 1-3). On October 13, 2011, Plaintiff filed the present appeal. ECF No. 1. Both Parties have filed appeal briefs. ECF Nos. 9, 11. This case is now ready for decision.

## 2.     **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of

proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3.     **Discussion:**

In his appeal brief, Plaintiff raises four arguments for reversal. ECF No. 9. Specifically,

Plaintiff claims the following: (A) the ALJ erred in finding his alcohol use was a contributing factor material to the determination of disability; (B) the ALJ erred by failing to obtain or seek medical support for the conclusion that his alcohol use was a contributing factor material to the determination of a disability; (C) the ALJ erred by finding his left foot electrocution injury was non-severe; and (D) the ALJ did not support his disability determination with substantial evidence in the record. ECF No. 9 at 10-22. This Court will address each of these arguments for reversal, but this Court will not address the final argument separately because it restates Plaintiff's other three arguments and does not raise any new claims.

### A.    Alcoholism as a Contributing Factor

Plaintiff claims the ALJ improperly determined his alcohol use was a contributing factor material to the determination of disability. ECF No. 9 at 10-13. Plaintiff claims his alleged injury from an electrocution is "inherently" unrelated to his alcohol use, and he would be disabled from this injury even if he stopped drinking. *Id.* In response, Defendant argues that the ALJ properly found Plaintiff's alcoholism was a contributing factor material to the determination of disability. ECF No. 11 at 7-12. Defendant argues that the "key factor" in determining whether Plaintiff's alcoholism is a contributing factor is whether "Plaintiff would still be disabled if he stopped using alcohol." *Id.* Defendant claims that because Plaintiff would not still be disabled, the ALJ properly determined his alcoholism was a contributing factor. *Id.*

Based upon a review of Plaintiff's medical records, this Court finds Defendant is correct in his argument, and the ALJ's decision on this issue is supported by substantial evidence. Indeed, Plaintiff's medical records demonstrate that in July of 2008, his treating physician Dr. Lori M. Cheney, M.D. referred him to Dr. Daniel Valach, M.D. for possible renal failure. (Tr. 271-274). Upon admission to the emergency room, Dr. Valach reported Plaintiff showed symptoms of acute

renal failure due to nausea, vomiting, diarrhea, dehydration, and electrolyte depletion. (Tr. 271). Dr. Valach found Plaintiff did not have any signs of stroke, seizure, neuropathy, or neuro deficits. (Tr. 272). Dr. Valach did express alarm when Plaintiff explained that for the past five years, he consumed one quart of liquor a day. (Tr. 272). Dr. Valach described his condition as "chronic alcoholism." (Tr. 271). Upon examination, Dr. Valach opined that Plaintiff "is going to recover with conservative measures and management with aggressive hydration and interventions per routines in acute renal failure of this nature." (Tr. 273). Dr. Valach attributed the symptoms of renal failure to Plaintiff's alcoholism, which he described as "life limiting." (Tr. 273-274).

On August 11, 2008, Plaintiff had a second episode of renal failure while he and his wife were out boating. (Tr. 296-298). Dr. Cheney reported Plaintiff had been drinking one quart of whiskey a day, and he went out on a weekend boating trip when he became ill with sweating, muscle cramps, nausea, and vomiting. (Tr. 296). Dr. Cheney began a course of aggressive hydration and medication, which was complicated "because of [Plaintiff's] alcohol dependence." (Tr. 297). Once Dr. Cheney stabilized Plaintiff's condition, she discharged him with advice to stop abusing alcohol and recommended he contact Alcoholics Anonymous ("AA"). (Tr. 298).

On November 20, 2009, Plaintiff presented to Dr. Cheney complaining that when he went hunting over the weekend, his left foot started swelling. (Tr. 305). During that appointment, Plaintiff indicated to Dr. Cheney that he stopped abusing alcohol. (Tr. 305). Plaintiff also reported his telemarketing job ended, and he was unemployed. *Id.* During this appointment, Dr. Cheney recognized Plaintiff suffered from "migrating arthralgias and myalgias and chronic left foot pain secondary to electrocution." (Tr. 306). Dr. Cheney adjusted Plaintiff's medications and advised him to return "in a few months." (Tr. 306).

On May 21, 2010, after a six months delay, Plaintiff again presented to Dr. Cheney. (Tr. 370-

372).  During this appointment, he again reported left foot pain and swelling after he went hunting. (Tr. 370-372).  Plaintiff reported during this appointment that he was still no longer drinking.  *Id.*  Dr. Cheney recommended that Plaintiff see a rheumatologist.[1]  *Id.*  Also during this appointment, Dr. Cheney recommended that Plaintiff apply for disability.  *Id.*  It appears Dr. Cheney made this recommendation because Plaintiff did not have insurance and needed assistance with his medical bills.  *Id.*

On June 4, 2010, Plaintiff was admitted to the emergency room of Baxter Regional Medical Center complaining of muscle cramps, weakness, and pain. (Tr. 429).  Plaintiff reported "he had been working outside the day prior [to his admittance to the hospital] for about 6 hours."  *Id.*  Dr. Cheney explained these symptoms were very similar to those he had in 2008 when he was diagnosed with renal failure.  *Id.*  Dr. Cheney reported Plaintiff had been drinking.  (Tr. 430).  It appears Plaintiff attempted to minimize the effects of the alcohol use by explaining he was not "drinking heavily at this time."  *Id.*  He was treated and released.  (Tr. 422).

On June 7, 2010, Dr. Cheney completed a questionnaire for Plaintiff.  (Tr. 369).  In this report, she stated Plaintiff has several limitations in his ability to work, but it also appears she doubted Plaintiff's claim of sobriety. (Tr. 369).  When asked if Plaintiff's alcohol use materially contributed to his limitations, Dr. Cheney answered, "not sure–Pt claims abstinence from ETOH for > 6 months."[2] *Id.*

In this report, Dr. Cheney also found Plaintiff had several restrictions on his ability to work.

---

[1] Based upon the record, it appears Plaintiff never sought follow-up treatment with a rheumatologist. Such a failure to seek follow-up treatment indicates Plaintiff's impairment may not be as severe as he alleges. *See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995) (holding that a failure to seek treatment may be inconsistent with an allegation of disability).

[2] It appears such a doubt would be justified since Plaintiff had just been admitted to the hospital three days prior, and during that admission, he stated he had been drinking. (Tr. 429).

(Tr. 367-368). Plaintiff references these restrictions in his briefing to support his claim that he is unable to work. (Tr. 12-13). Despite Plaintiff's argument on that issue, however, Dr. Cheney's treatment records do not fully support these findings. As noted above, Plaintiff did not consistently seek treatment from Dr. Cheney, and at one point, he had waited six months to seek treatment from her. Plaintiff also did not seek a follow-up appointment with a rheumatologist as directed by Dr. Cheney. Further, the limitations Dr. Cheney placed on Plaintiff are primarily stated in a checklist format and are conclusory. (Tr. 367-369). Thus, the ALJ was not required to give deference to Dr. Cheney's findings. *See Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir. 1996) (declining to adopt a treating physician's opinions where they consisted "of nothing more than vague, conclusory statements").

Based upon this review of Plaintiff's medical records, this Court first notes that Plaintiff's alcohol dependence is well-supported by the record. Further, based upon this medical evidence, this Court finds substantial evidence supports the ALJ's determination that Plaintiff's other limitations are not disabling. Accordingly, this Court finds Plaintiff's first argument is without merit.

    **B.**    **Evidence of a Contributing Factor**

Plaintiff claims with his second argument that the ALJ erred in "failing to obtain or seek medical support for the conclusion that this man's [his] alcohol use is a material and contributing factor to a finding of disability." ECF No. 9 at 13-15. Plaintiff argues that such an opinion was necessary for the ALJ to decide his alcohol use was a contributing factor. *Id.*

In *Vester v. Barnhart,* the Eighth Circuit addressed this issue of what evidence is required to establish alcoholism is a "material factor contributing to . . . disability." 416 F.3d 886, 891 (8th Cir. 2005). In *Vester,* the Eighth Circuit declined to hold that a plaintiff's "ability to work in the absence of alcoholism" was a 'medical question'" that required supporting medical evidence. *Id.*

Nevertheless, under the specific facts in *Vester*, the Eighth Circuit still found the plaintiff's physician's statements as to plaintif's alcoholism and recovery prospects provided substantial evidence supporting the ALJ's finding that plaintiff's alcohol use was a contributing factor. *Id.*

In the present action, consistent with *Vester,* the ALJ was not required to provide any medical evidence specifically outlining Plaintiff's different limitations with and without his substance use. The ALJ, therefore, did not err by declining to order a consultative examination on this issue. Further, even if some medical evidence on this issue is required, upon review of the transcript, there is sufficient evidence for the ALJ's decision to be supported by substantial evidence. Notably, Plaintiff's medical records demonstrate that when he stops drinking, his symptoms subside.

During his appointment on November 20, 2009, he represented to Dr. Cheney that he had stopped drinking. (Tr. 305). After this appointment, and once Plaintiff stopped drinking, he did not seek treatment again for six months or until May 21, 2010. (Tr. 370-372). Then, after he began drinking again, on June 4, 2010, Plaintiff was admitted to the emergency room of Baxter Regional Medical Center complaining of muscle cramps, weakness, and pain. (Tr. 429). The fact Plaintiff's symptoms subsided during the time he reported he was no longer drinking provides support for the ALJ's determination that alcoholism was a contributing factor.[3] Accordingly, based upon this information and because Plaintiff's symptoms subsided the only time he stopped drinking, this Court finds the ALJ's disability determination is supported by substantial evidence, and no further development of the record is required.[4]

---

[3] Even Plaintiff's treating physician Dr. Cheney reported Plaintiff's prognosis was "good"as long as he seeks further treatment for his impairments, including his alcohol-related impairments. (Tr. 365).

[4] During the relevant time period, the only time Plaintiff reported not drinking was after his appointment on November 20, 2009. (Tr. 305). Therefore, the only possible medical records related to a time period when Plaintiff was not drinking must have been dated between that date and June 4, 2010 when he was again admitted to the hospital after drinking.

### C. Severe Impairment

Plaintiff claims the ALJ improperly determined his electrocution injury to his left foot was a non-severe impairment. ECF No. 9 at 15-18. In this action, however, the ALJ found Plaintiff did have the severe impairments of fibromyalgia, arthralgias, *and gout*. (Tr. 12-13, Finding 3) (emphasis added). While Plaintiff argues the severe impairments of fibromyalgia and arthralgias are separate and distinct from the left foot pain and swelling (ECF No. 9 at 15), the severe impairment "gout" would include Plaintiff's symptoms from left foot joint pain and swelling. Thus, this Court finds the ALJ properly determined his left foot injury or "gout" was severe.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and recommends that it be **AFFIRMED**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.** *See Thompson v. Nix*, **897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 26th day of September 2012.**

/s/   Barry A. Bryant  
HON. BARRY A. BRYANT  
U.S. MAGISTRATE JUDGE